**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| APPLICATIONS TECHNOLOGIES, INC.<br>Plaintiff,<br><br>v.<br><br>D6, LLC. f/k/a D6, Inc. and Edward Dominion, an individual,<br><br>Defendants. | **C.A. No. 4:26-CV-01403**<br><br>**DEMAND FOR JURY TRIAL** |

**COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Applications Technologies, Inc. ("AT"), by and through its undersigned counsel, hereby files this Complaint against Defendants D6 LLC f/k/a D6, Inc. ("D6") and Edward Dominion ("Dominion") (collectively, "Defendants") and alleges as follows:

**NATURE OF THE ACTION**

1. This action seeks legal and equitable relief for (1) unlawful infringement of U.S. Patent No. 10,836,551 ("the '551 Patent") and U.S. Patent No. 12,486,093 ("the '093 Patent") (collectively, the "Patents-in-Suit"), which generally relate to packaging devices; (2) violations of the federal Defend Trade Secrets Act, 18 U.S.C. § 1836 ("DTSA"); and (3) violations under the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.001-134A.008 ("TUTSA").

**PARTIES**

2. Plaintiff Applications Technologies, Inc. is a Delaware corporation with its headquarters and principal place of business at 30 Valley Wood Somerset, NJ 08873 ("AT").

3. Upon information and belief, Defendant D6 is a Delaware limited liability company with its headquarters and principal place of business located at 201 Commercial Services Dr., Sulphur Springs, Texas 75482.

4. Upon information and belief, Defendant Dominion is a citizen of Montana residing at Bozeman, Montana. Dominion is over the age of eighteen and is otherwise *sui juris*.

5. Upon information and belief, Defendant Dominion is the President, Chief Executive and sole member of D6. Dominion authorizes, participates in, directs, controls, causes, ratifies, and/or is the moving force behind the activities of D6, including the development, sourcing, offer for sale and sale of the accused products and/or their components. On information and belief, Dominion dominates and controls D6 so as to make the company a simple instrumentality or adjunct to him. Under such circumstances, D6's corporate fiction should be disregarded with respect to Dominion because D6 is the alter ego and/or business conduit of Dominion and to observe the corporation would work an injustice.

**JURISDICTION AND VENUE**

6. This is a civil action that arises under (1) the Patent Laws of the United States, 35 U.S.C. § 1 *et seq*., including, but not limited to, 35 U.S.C. §§ 271 and 281; (2) DTSA and (3) TUTSA.

7. The Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338; 18 U.S.C. § 1836; and 28 U.S.C. § 1367 because the state law claims are so closely related to claims in this action within the Court's jurisdiction that they form part of the same case or controversy and therefore make the Court's exercise of supplement jurisdiction appropriate.

8. The Court has personal jurisdiction over D6 because, upon information and belief, D6 continuously and systematically conducts business in the State of Texas and in this judicial district. For example, D6 maintains a physical location in Sulphur Springs, Texas, which serves as its headquarters and principal place of business. D6 is also committing the unlawful acts complained of herein in this judicial district.

9. The Court has personal jurisdiction over Dominion because, upon information and belief, Dominion continuously and systematically conducts business in the State of Texas

and in this judicial district, individually or collectively through D6. For example, Dominion is the President, Chief Executive and sole member of D6 which maintains a physical location in Sulphur Springs, Texas, which serves as its headquarters and principal place of business. Thus, Dominion is responsible, in whole or in part, for the unlawful patent infringement complained of herein in this judicial district. The Court further has personal jurisdiction over Dominion because Dominion has sufficient minimum contacts with the State of Texas and purposely availed himself of the privilege of conducting activiting in the State of Texas and by, *inter alia*, violating DTSA and TUTSA in Texas. This Court has personal jurisdiction over Dominion because the causes of action again him relate to, and arise from, his contacts with Texas.

10. Exercising personal jurisdiction over Defendants in this action comports with due process and traditional notions of fair play and substantial justice.

11. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400. Venue is proper as to the patent infringement claims because the defendants have committed acts of infringement in this judicial district and have a regular and established place of business in this judicial district. Venue is proper as to the DTSA and TUTSA claims under 28 U.S.C. § 1391(b)(2).

**BACKGROUND**

***Dr. Nazir Mir***

12. Dr. Nazir Mir is the sole founder, owner and officer of AT.

13. Dr. Mir received his Ph.D from the Indian Agricultural Research Institute, New Delhi, India.

14. Dr. Mir currently serves as an Associate Member of the Graduate Faculty at Rutgers University, Food Science Department, where he focuses on shelf life extension, food packaging and control release agents.

***The Patents-In-Suit***

15. AT is the holder of several patents in the field of food packaging which issued from U.S. Patent Application Serial No. 16/672,456, filed on November 2, 2019.

16. On November 17, 2020, the '551 Patent, entitled "Releasable Packaging Device for Packaging Food Product" was duly and legally issued by the U.S. Patent and Trademark Office ("USPTO"). The '551 Patent is valid, subsisting and assigned to AT. A true and correct copy of the '551 Patent is attached hereto as Exhibit 1.

17. On December 2, 2025, the '093 Patent, entitled "Releasable Packaging Device for Packaging Food Product" was duly and legally issued by the USPTO. The '093 Patent is valid, subsisting and assigned to AT. A true and correct copy of the '093 Patent is attached hereto as Exhibit 2.

18. Both the '551 and '093 Patents are generally directed to packaging devices for perishable foods that use a peelable, resealable and breathable film with atmospheric control attributes, such as perforations, that maintain critical conditions for optimizing product life.

19. The '551 Patent and the '093 Patent are referred to as the "Patents-In-Suit."

***AT's Prior History With D6***

20. D6 is a food packaging products manufacturer which provides packaging and containers. D6's President, Chief Executive Officer and sole member is Dominion.

21. D6 has sold millions of plastic packages to the nation's largest retailer, Walmart.

22. In or about 2019, Walmart was in search of a specific package for fresh-cut fruit products, which would be tamper proof, prevent leaking and provide a longer shelf life.

23. D6 requested that AT research and develop such a package with Freshtech, Inc. ("FT").

24. Since AT owned the patented perforation technology, D6 was required to obtain a license from AT for the patented technology.

25. In or about February, 2020, D6, AT and FT entered into a Master Licensing and

Commercialization Agreement ("License Agreement") in order to supply packages to D6's customer, Walmart.

26. Dominion executed the License Agreement on behalf of D6.

27. According to the License Agreement: (1) AT owned all right, title, and interest in the technology reflected in the licensed patents; (2) the licensed patents included all patents issuing from the U.S. Patent Application Serial Nos. 16/365,871; 16/672,456; and 16/713,783; (3) the licensed patents are valid and enforceable; (4) D6 agreed not to oppose or challenge the validity or enforceability of the licensed patents, or assert any other claim or defense in any patent litigation concerning the licensed patents (and expressly waived such defenses) ("Non-Challenge Provisions"); (5) D6 licensed the patents for the sole and exclusive purpose of commercializing cut-fruit product packaging (licensed products); (6) "commercialization" meant all activities associated with the license products; (7) any information developed or provided by AT to D6 either directly or through FT, convertors and fresh-cut fruit packers was to be treated as "confidential information"; and (8) AT retained all rights to any trade secrets.

28. AT spent the timeframe between 2020 and 2023, researching, developing and testing packaging to meet the specifications set by Walmart for commercialization.

29. The packaging to be commercialized was comprised of a tray and a film. Since D6 was a tray manufacturer, development of appropriate trays for commercialization (designed to bear the D6 logo) formed part of AT's project focus.

30. Since D6 was not a film manufacturer, and had no expertise in the area, AT was responsible for developing the technology that would confer the benefits required by Walmart (*i.e.*, a peelable and sealable packaging film that provides a breathable environment for the fresh-cuit fruit).

31. The identifiable trade secrets created, developed and owned by AT during the course of the project include, without limitation: (i) the creation of compatible trays; (ii) the

development of film microperforations, patterns and associated technology; (iii) specific sealing materials and conditions; and (iv) a diverse set of testing conditions for operability and shelf life preservation ("Trade Secrets").

32. At various times during the development process, AT shared these Trade Secrets with Defendants under the License Agreement, on a confidential basis, for purposes of developing, evaluating and testing the packaging according to Walmart's specifications.

33. At or near the end of October, 2023, D6 terminated the License Agreement.

34. The Non-Challenge Provisions survive termination.

***The Accused Products***

35. Subsequent to the termination of the License Agreement, D6 began selling infringing resealable packaging and/or components for the assembly of same to third-party co-packers, which in turn, were offered for sale and sold to the public by Walmart. ("Accused Products").

36. An example of the Accused Products, purchased from Walmart in the February, 2026 - May, 2026 timeframe, embossed with the D6 logo, is shown below.





37. Package analysis confirmed that the Accused Product incorporated patented and trade secret technology, including microperforations, researched, developed and owned by AT.

38. On information and belief, in the course of unlawfully commercializing the Accused Products, Defendants, either individually or collectively, disclosed AT's confidential trade secrets with one or more of: a film supplier, Terphane; a broker Cello-Wrap, converters, Overwraps, Metropak, Associated Labels and Fastik; perforators, Perftech and LasX; copackers, Country Fresh and Taylor Farms; and retailers, Walmart, HEB and others.

***Direct Patent Infringement***

39. By virtue of their activities, Defendants, individually and collectively, are direct infringers of one or more claims of the Patents-In-Suit.

40. On information and belief, the Accused Products and/or their components, were specifically manufactured, assembled, shipped, tested, distributed, advertised, offered for sale, sold, used, or imported by Defendants and contained all of the elements recited in one or more of the claims of the Patents-In-Suit.

41. On information and belief, Defendants' officers, directors, employees, agents, representatives, affiliates, individuals sponsored by Defendants, and/or persons who endorse Defendants and/or their Accused Products, have manufactured, assembled, shipped, tested, distributed, advertised, offered for sale, sold, used, or imported the Accused Products which contain all of the elements recited in one or more of the claims of the Patents-In-Suit.

42. On information and belief, Defendants encouraged and/or are aware that their officers, directors, employees, agents, representatives, affiliates, individuals sponsored by Defendants, or persons who endorse Defendants or their Accused Products, have manufactured, assembled, shipped, tested, distributed, advertised, offered for sale, sold, used, or imported the Accused Products which contain all of the elements recited in one or more of the claims of the Patents-In-Suit, and these individuals or entities are and were acting under one or more of the

Defendants' direction and control when practicing the patent claims.

**Indirect Patent Infringement**

43. By virtue of their activities, Defendants, individually or collectively, are and were indirect infringers of one or more claims of the Patents in Suit, including committing inducement to infringe and/or contributory infringement.

*Inducement To Infringe*

44. Defendants, individually or collectively, induced direct infringement by one or more third party entities or individuals, including film suppliers, brokers, converters, perforators, copackers and/or retailers, who have purchased or otherwise acquired the Accused Products or components thereof ("End Users").

45. End Users manufactured, assembled, shipped, tested, distributed, advertised, offered for sale, sold, used, or imported the Accused Products which contain all of the elements recited in one or more of the claims of the Patents-In-Suit and are therefore direct infringers.

46. Defendants knew about the Patents-In-Suit and/or the applications that matured into them as early as October 23, 2023.

47. Defendants acted with the specific intention to induce End Users to infringe one or more of the Patents-In-Suit.

48. Defendants knew that the acts of the End Users would constitute infringement of one or more of the claims of the Patents-In-Suit, or despite knowing there was a high probability that the acts of the End Users would commit direct infringement, turned a blind eye towards that high probability.

49. The Accused Products contain elements of one or more of the claims in the Patents-In-Suit.

50. Defendants' trays, packages, materials, components, instructions, analysis, testing, promotion of and/or technical information concerning the Accused Products provide

the elements of one or more of the claims in the Patents-In-Suit in a manner that encourages, urges, or induces End Users to infringe them.

51. Defendants specifically instruct End Users, such as copackers, to assemble the Accused Products for sale, or resale, to the third parties, or the consuming public.

52. As a direct result of Defendants' activities, End Users manufactured, assembled, shipped, tested, distributed, advertised, offered for sale, sold, used, or imported the Accused Products which contain all of the elements recited in one or more of the claims of the Patents-In-Suit.

53. Defendants have therefore specifically intended to cause and therefore induced End Users to directly infringe the claims of the Patents-In-Suit.

*Contributory Infringement*

54. Defendants have contributed to the direct infringement by End Users.

55. End Users manufactured, assembled, shipped, tested, distributed, advertised, offered for sale, sold, used, or imported the Accused Products which contain all of the elements recited in one or more of the claims of the Patents-In-Suit and are therefore direct infringers.

56. Defendants knew about the Patents-In-Suit and/or the applications that matured into them as early as October 23, 2023.

57. The Accused Products are special purpose products developed and intended to be used to practice one or more of the claims of the Patents-In-Suit.

58. The Accused Products are not staple articles of commerce.

59. The Infringing Products are not suitable for any non-infringing uses.

60. The inclusion of features in the Accused Products that are recited in the claims of the Patents-In-Suit was material to practicing the claimed invention.

61. Defendants had knowledge that the Accused Products were especially designed for and adapted by End-Users for the practicing of the invention claimed in the Patents-In-Suit.

62. Defendants had knowledge that the Accused Products, when assembled, infringe one or more of the claims of the Patents-In-Suit.

63. Defendants knowingly and willfully elected to indirectly infringe the Patents-In-Suit despite knowledge of the existence of the Patents-In-Suit and the infringing nature of the Accused Products, or turned a blind eye to such infringement.

**COUNT I – PATENT INFRINGEMENT OF THE '551 PATENT**

64. AT incorporates by reference and realleges Paragraphs 1-63 of its Complaint and further incorporates by reference the Preliminary Infringement Claim Chart for the '551 Patent; Claim 1 (attached as Exhibit 3), as though fully set forth herein.

65. The allegations provided are exemplary and without prejudice to AT's infringement contentions. In providing these allegations, AT does not convey or imply any particular claim constructions or the precise scope of the claims. AT's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the Court's scheduling order and local rules.

66. The '551 Patent is presumed valid pursuant to 35 U.S.C. § 282.

67. Upon information and belief, all of the infringing activities (i) are controlled by Defendants, individually or collectively, or an entity within Defendants' control and located within the United States; and (ii) occur within the United States.

68. Defendants are not licensed or authorized to make, use, sell, offer to sell, or import any product covered by the claims of the '551 Patent.

69. Upon information and belief, Defendants have directly infringed and will continue to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '551 Patent in violation of 35 U.S.C. § 271(a), including but not limited to Claim 1, every time Defendants make, use, offer to sell, or sell the Accused Product.

70. Defendants have infringed, are infringing, and will continue to infringe, literally

and under the doctrine of equivalents, by inducing the infringement of others, of one or more claims of the ‘551 Patent under 35 U.S.C § 271(b) by making, using, selling, and/or offering for sale the Accused Products.

71. Defendants have infringed, are infringing, and will continue to infringe, literally or under the doctrine of equivalents, by contributing to the infringement of others, of one or more claims of the ‘551 Patent under 35 U.S.C § 271(c) by making, using, selling, and/or offering for sale the Accused Products.

72. Defendants' infringement of the '551 Patent is and will be willful, deliberate, and intentional.

73. AT has no adequate remedy at law.

74. Defendants' patent infringement is causing irreparable injury to AT and, unless enjoined, will continue to cause irreparable injury.

75. As a result of Defendants' intentional and willful infringement, AT is entitled to an injunction and damages in a sum to be determined.

76. Additionally, the willful and deliberate nature of Defendants' infringing activities entitles AT to recover trebled actual damages and to recover their attorneys' fees and costs incurred in this action.

**COUNT II – PATENT INFRINGEMENT OF THE ‘093 PATENT**

77. AT incorporates by reference and realleges Paragraphs 1-63 of its Complaint and further incorporates by reference the Preliminary Infringement Claim Chart for the ‘093 Patent; Claim 1 (attached as Exhibit 4), as though fully set forth herein.

78. The allegations provided are exemplary and without prejudice to AT's infringement contentions. In providing these allegations, AT does not convey or imply any particular claim constructions or the precise scope of the claims. AT's claim construction contentions regarding the meaning and scope of the claim terms will be provided under the

Court's scheduling order and local rules.

79. The '093 Patent is presumed valid pursuant to 35 U.S.C. § 282.

80. Upon information and belief, all of the infringing activities (i) are controlled by Defendants, individually or collectively, or an entity within Defendants' control and located within the United States; and (ii) occur within the United States.

81. Defendants are not licensed or authorized to make, use, sell, offer to sell, or import any product covered by the claims of the '093 Patent.

82. Upon information and belief, Defendants have directly infringed and will continue to directly infringe, either literally or under the doctrine of equivalents, one or more claims of the '093 Patent in violation of 35 U.S.C. § 271(a), including but not limited to Claim 1, every time Defendants make, use, offer to sell, or sell the Accused Product.

83. Defendants have infringed, are infringing, and will continue to infringe, literally and under the doctrine of equivalents, by inducing the infringement of others, of one or more claims of the '093 Patent under 35 U.S.C § 271(b) by making, using, selling, and/or offering for sale the Accused Products.

84. Defendants have infringed, are infringing, and will continue to infringe, literally or under the doctrine of equivalents, by contributing to the infringement of others, of one or more claims of the '093 Patent under 35 U.S.C § 271(c) by making, using, selling, and/or offering for sale the Accused Products.

85. Defendants' infringement of the '093 Patent is and will be willful, deliberate, and intentional.

86. AT has no adequate remedy at law.

87. Defendants' patent infringement is causing irreparable injury to AT and, unless enjoined, will continue to cause irreparable injury.

88. As a result of Defendants' intentional and willful infringement, AT is entitled

to an injunction and damages in a sum to be determined.

Additionally, the willful and deliberate nature of Defendants' infringing activities entitles AT to recover trebled actual damages and to recover their attorneys' fees and costs incurred in this action.

**COUNT III – VIOLATION OF DEFEND TRADE SECRETS ACT**

89. AT incorporates by reference and realleges Paragraphs 1-63 of its Complaint as though fully set forth herein.

90. AT expended significant time, effort and resources in creating the technology associated with the commercialization of a peelable, sealable and breathable packaging for fresh-cut fruit which led to, incorporates and relies on the Trade Secrets.

91. AT owns all right, title, and interest in the Trade Secrets.

92. The Trade Secrets are not matters of public knowledge and not generally known in the industry, including without limitation, the secrets themselves and supporting scientific, technical and engineering information, such as patterns, formulas, designs, prototypes, methods, techniques, processes, procedures, testing and know-how, tangible or intangible.

93. The Trade Secrets are related to packaging used in, or intended for use in, interstate commerce because they were designed for sale in retailer outlets across the country.

94. These Trade Secrets derive independent economic value from their secrecy, in part, because the information enabled Defendants to produce something a competitor cannot, or that a competitor would pay to obtain.

95. At all times, AT has undertaken reasonable measures under the circumstances to assure the Trade Secrets have been kept confidential and secret, including requiring all such information to be treated as confidential under the License Agreement.

96. At all times, the Trade Secrets were treated as controlled technical information, disclosed for limited development and commercialization purposes, and not made generally

available to the public or competitors.

97. Defendants, by engaging in and continuing to engage in the conduct and activities described herein, have violated the DTSA through their improper acquisition and disclosure of the Trade Secrets which constitutes actual and threatened misappropriation.

98. Defendants have actually used, plan to use and/or will inevitably use the Trade Secrets, either alone or in cooperation with one or more third party film suppliers, brokers, converters, perforators, copackers and a retailer to sell packaging based on the Trade Secrets.

99. Defendants owed a duty to maintain the secrecy of the Trade Secrets.

100. Defendants' actions were willful, malicious and intended to injure AT and its business.

101. Defendants have gained an unfair competitive advantage and other unjust enrichment through the misuse of AT's Trade Secrets.

102. As a direct and proximate result of Defendants' misappropriation, AT experienced harm, injury and damages, including without limitation loss of business, loss of market share, lost profits and attorneys' fees and costs.

103. AT has and will continue to suffer irreparable harm as a result of Defendants' unlawful conduct, including loss of goodwill, reputation and ability to compete in a competitive marketplace.

104. AT is entitled to and requests an award of damages in its favor for actual damages caused by the misappropriation, damages for all unjust enrichment caused by the misappropriation that is not addressed in computing damages for actual loss and/or damages, measured by the imposition of liability for a reasonable royalty for the unauthorized disclosure or use of AT's Trade Secrets.

105. Under the DTSA, AT is entitled to and requests exemplary damages in an amount not more than two times AT's actual damages, plus reasonable attorneys' fees.

**COUNT IV – VIOLATION OF TEXAS UNIFORM TRADE SECRETS ACT**

106. AT incorporates by reference and realleges Paragraphs 1-63 of its Complaint as though fully set forth herein.

107. This cause of action in brought under the Texas Uniform Trade Secrets Act, TEX. CIV. PRAC. & REM. CODE ANN. §§ 134A.001-134A.008 ("TUTSA").

108. AT expended significant time, effort and resources in creating the technology associated with the commercialization of a peelable, sealable and breathable packaging for fresh-cut fruit which led to, incorporates and relies on the Trade Secrets.

109. AT owns all right, title, and interest in the Trade Secrets.

110. The Trade Secrets are not matters of public knowledge and not generally known in the industry, including without limitation, the secrets themselves and supporting scientific, technical and engineering information, such as patterns, formulas, designs, prototypes, methods, techniques, processes, procedures, testing and know-how, tangible or intangible.

111. The Trade Secrets allow AT to obtain a fair and lawful competitive advantage over those who do not know or have the right to use its Trade Secrets.

112. Because the Trade Secrets information gives AT a business advantage, AT does not disclose that information to anyone unless they have agreed to maintain that information as confidential. The information therefore constitutes trade secrets under Texas Civil Practice and Remedies Code section 134A.0002(6).

113. Defendants acquired and misappropriated AT's trade secrets by improper means.

114. Defendants learned of the Trade Secrets while in a License Agreement with AT.

115. When Defendants terminated the License Agreement any right of Defendants to use the Trade Secrets was also terminated.

116. Defendants nevertheless disclosed and used the Trade Secrets without express

or implied consent and knew (or had reason to know) that the Trade Secrets were obtained by improper means, acquired under circumstances giving rise to a duty to maintain their secrecy or limit their use, and/or derived from or through a person who owned AT a duty to maintain their secrecy or limit their use.

117. Defendants have disclosed and/or used, caused others to use, or threatened to use or disclose AT's Trade Secrets for their own financial gain and to gain an unfair competitive business advantage with third parties, including copackers and retailers, unlawfully using the Trade Secrets in association with their product packaging.

118. This disclosure and use of AT's valuable Trade Secrets in competition with AT, without license or authority, is a misappropriation of AT's Trade Secrets under TUTSA.

119. Because Defendants understand the importance of AT's Trade Secrets, and they have disclosed and/or used, caused others to use, or threatened to use or disclose AT's Trade Secrets to benefit themselves, their misappropriation is willful and intentional.

120. Accordingly, AT is entitled to all actual and exemplary damages resulting from this misappropriation and breach of TUTSA.

121. Defendants' wrongful disclosure and/or use of AT's Trade Secrets has caused, and will continue to cause serious damage to AT in an amount not presently ascertainable. AT demands that Defendants be ordered to pay all actual damages, special damages and consequential damages.

122. AT further demands that Defendants be ordered to pay all reasonable and necessary attorneys' fees incurred by AT in bringing this claim. And because of the egregious nature of Defendants' conduct, AT demands that they be ordered to pay exemplary damages.

## JURY DEMAND

AT demands a trial by jury on all issues presented in this Complaint so triable.

## PRAYER FOR RELIEF

WHEREFORE, AT asks this Court to enter judgment in its favor, and against D6, its subsidiaries, affiliates, agents, servants, employees, and all persons in active concert or participation with D6, including Dominion individually, and grant the following relief:

(A) A finding that Defendants have directly and indirectly infringed one or more claims of the Patents-In-Suit;

(B) An award of damages adequate to compensate AT for Defendants' infringement of the Patents-In-Suit under 35 U.S.C. § 284;

(C) A determination that Defendants' infringement of the Patents-In-Suit has been willful and deliberate;

(D) A determination that this Action is "exceptional" under 35 U.S.C. § 285, thereby entitling AT to an award of its reasonable attorneys' fees and costs incurred in prosecuting this Action;

(E) An award of enhanced damages under 35 U.S.C. § 284 of treble damages based on the willful and deliberate nature of Defendants' infringement;

(F) Entering judgment in favor of AT and against Defendants on trade secret Counts III-IV;

(G) Ordering Defendants to pay damages to AT in an amount to be proven at trial, including actual damages, consequential damages, compensatory damages, disgorgement of revenue and gains wrongfully acquired, a reasonable royalty, treble damages and exemplary damages;

(H) An award of pre-judgment and post-judgment interest on all damages;

(I) An award of Court costs and attorneys' fees as allowed by applicable law; and

(J) Such other relief as this Court deems fair, just and appropriate.

Dated: September 29, 2026

Respectfully submitted,

By: */s/ Michael C. Smith*

Michael C. Smith
Texas Bar No. 18650410
michael.smith@solidcounsel.com
Scheef & Stone, LLP
113 E. Austin Street
Marshall, TX 75670
(903) 938-8900

Gregory L. Hillyer (*pro hac vice* forthcoming)
Fla. Bar No. 682489
Email: ghillyer@hillyerlegal.com
5335 Wisconsin Avenue, N.W., Suite 440
Washington, D.C. 20015-2052
202-686-2884

*Counsel for Plaintiff Applications Technologies, Inc.*